RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12 / 9 / 11
      JDK

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RAYFIELD DAVIS,<br>        Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. CV10-01920 |
| VERSUS | |
| JAMES LEBLANC, et al.,<br>        Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Rayfield Davis ("Davis") on December 27, 2010 and amended on March 21, 2011 (Doc. 7). The sole remaining defendants are Lynn Cooper, warden of the Avoyelles Correctional Center ("ACC") in Cottonport, Louisiana, sued in his individual capacity, and Sgt. Ducote, a corrections officer employed at ACC.[1] Davis alleges that, on September 8, 2010, at about 11:30 p.m., while he was confined in ACC, he was attacked and stabbed by two other inmates who were armed with a dangerous weapon. Davis contends defendants failed to protect him, violated his right to due process, recklessly endangered him, and failed to properly secure the housing area. Davis alleges that he has exhausted his administrative remedies. For relief, Davis asks

---

[1] Defendants Clyde Benson, Paul Gaspard, James Cooper, Robert Ewing, Ronnie Howard, James LeBlanc, and John Doe were dismissed on June 20, 2011 (Doc. 10).

for monetary damages, injunctive relief, medical expenses, costs, attorney fees, any other general and equitable relief, and a jury trial.

Defendant Cooper filed a motion to dismiss pursuant to Fed.R.Civ.P. rule 12(b)(6), for failure to state a claim on which relief can be granted (Doc. 16), which Davis opposes (Doc. 19). That motion is now before the court for disposition.

## Law and Analysis

### Motion to Dismiss

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hirras v. National Railroad Passenger Corp., 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); Doe, 753 F.2d at 1102. For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader. Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1101 (D.C.Cir. 1985). It is presumed that general allegations embrace

the specific facts that are necessary to support the claim. National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

The defense of qualified immunity may be considered on a motion to dismiss. In order to survive a motion to dismiss, a plaintiff's allegations must portray an objectively unreasonable violation of a clearly established right. Warnock v. Pecos Cty., 116 F.3d 776, 779 (5th Cir. 1997), citing Seigert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793 (1991).

The first inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513 (2002). If it is established that the defendants participated in constitutionally impermissible conduct, the defendants may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Hope, 122 S.Ct. at 2515. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. In the light of pre-existing law, the unlawfulness must be apparent. However, officials can be on notice that their conduct violates established law even in novel factual

circumstances. The salient question the court must ask is whether the state of the law at the time of the alleged incident gave the officers fair warning that their alleged conduct was unconstitutional. Hope, 122 S.Ct. at 2516.

Thus, if the pleadings on their face show an unreasonable violation of a clearly establish constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6). Shipp v. McMahon, 234 F.3d 907, 911-912 (5th Cir.), cert. den., 532 U.S. 1052, 121 S.Ct. 2193 (2001). Also, Woods, 60 F.3d at 1164. In other words, the threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Keenan v. Tejada, 290 F.3d 252, 261 (5th Cir. 2002), citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

Davis' Allegations

Davis alleges that, on September 8, 2010, at about 11:30 p.m., he was in bed asleep when he was attacked by two other inmates (one was known as "Oklahoma") with a weapon and stabbed several times. Davis further alleges that he was saved by his cellmate, Fitzpatrick, who intervened in the attack and was also stabbed. Davis contends that Sgt. Ducote, the tier sergeant on duty at the time, was asleep at his station, and the two offenders (inmates housed in the A1 tier) walked past him and entered B1 tier where plaintiff was housed. Davis contends he defended himself and began

fighting with "Oklahoma." Davis alleges there is a policy or custom at ACC to open the doors to the tiers of the housing units at 10:30 p.m.. Davis contends the policy/custom was promulgated by Warden Cooper in a memo, in disregard to the safety of inmates and in violation of Louisiana Department of Public Safety and Corrections policies. Davis alleges that Warden Cooper's open-tier policy/custom enabled his attackers to enter his housing unit tier and attack him.

Deliberate Indifference

Cooper contends Davis failed to state a claim for failure to protect him from violence from other inmates because he cannot show Cooper was deliberately indifferent to the risk of harm to Davis. Cooper contends he did not know there was a serious risk of harm to Davis caused by instituting a custom/policy to open the tier doors in the housing units at night. Cooper concedes that prisons are necessarily dangerous places, but that he did not draw the inference that ~~these~~ opening tier doors in the housing units at night would cause a substantial risk of harm to Davis from other inmates. Therefore, he contends he was not deliberately indifferent to Davis' safety. Warden Cooper also argues that he is entitled to qualified immunity.

　　　　　1.   Eight Amendment Right to Safety

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to

care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein. The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), citing Trop v. Dulles, 356 U.S. 86, 100 (1958). The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, a court must ascertain whether the officials involved acted with deliberate indifference to the inmates' health or safety. The courts may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), and cases cited therein.

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must

ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. Farmer, 114 S.Ct. at 1976-77.

Therefore, at the time of the incident complained of herein in 2010, the Eighth Amendment right to protection from violent assaults by other inmates was clearly established.

### 2. Failure to Protect Claim

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm

7

exists, and he must also draw that inference. Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. Farmer, 114 S.Ct. at 1984-1985.

Davis does not allege that Warden Cooper was present when he was attacked and failed to intervene, or that Warden Cooper knew Davis would be attacked. Instead, Davis contends Cooper created an unsafe condition, by instituting a policy or custom of opening the

8

tier doors in the housing units at night which permitted inmates freedom of movement between tiers, which created a substantial risk of inmate-on-inmate violence. Davis contends this practice, combined with a lack of an adequate inmate classification system,[2] created an excessive risk to inmate safety. Thus, inmates with an altercation history could be housed in the same housing unit, with open tier doors at night. Davis also contends Warden Cooper knew there was a substantial risk of inmate-on-inmate violence due to many such attacks in the past and due to Warden Cooper's many years of experience, as well as his positions on the disciplinary board and the inmate classification board. Davis contends that Cooper's positions on those boards gave him knowledge of which inmates, and how many, have histories of violence and of attacking other inmates.

For purposes of this motion to dismiss, the factual allegations of Davis' complaint are taken as true. In any event, Warden Cooper has not denied that he promulgated a custom or policy of opening doors at 10:30 p.m. that violates state policy, has not denied there have been many inmate-on-inmate attacks in the past, and has not denied that the only inmate classification system in place was one which allowed inmates to designate whether they had enemies or not.

---

[2] Davis alleges that the only inmate classification system in place was whether individual inmates signed a "no enemy" form; if they signed it, they were released into the general population, where the housing unit doors were open every night.

9

The security interest in controlling inmate movement is obvious. See Rose v. Carey, 2008 wl 4443229, *5 (S.D.Ind. 2008)("Prisons are dangerous places, and require rigorous security measures to insure inmate and staff safety. Restricting inmate movement, and knowing where inmates are at any point in time, are integral components of providing for inmate and staff security."); Also, Stokes v. Jordan, 95 F.3d 1158 (9th Cir. 1996) ("Conducting periodic searches, controlling the movement of inmates, and attempting to enforce prison regulations advance the legitimate security interests of the prison."); Searcy v. Louisiana Dept. of Corrections, 484 So.2d 773, 776 (La. App. 1st Cir. 1986), citing Dent v. Dept. of Corrections, 413 So.2d 920, 922 (La. App. 1st Cir. 1982) (court upheld prison guard's termination for sleeping on the job, finding that her failure to maintain an alert surveillance of prisoner movements could seriously have endangered her life, the lives of her fellow workers, and the lives of prisoners). Allowing inmates unrestricted movement in a prison creates a substantial risk to inmate safety. See Rose, 2008 wl 4443229, *5.

Cooper argues that failure to follow state policies does not, by itself, state a claim for violation of a constitutional right. A prison official's failure to follow the prison's policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996). However, proof that

10

a prison official failed to follow policy can be evidence of deliberate indifference. Accepting Davis' allegations as true for purposes of this motion, Warden Cooper's implementation of a custom or policy at ACC for opening tier doors a night, in violation of state policy, is indicative of at least deliberate indifference to inmate safety.

Cooper also argues that he did not have actual knowledge that Davis would be attacked. Although an official may prove that he was unaware of even an obvious risk to inmate health and safety by the usual evidentiary means, Cooper has not offered any proof of his lack of knowledge.[3] Since the Warden had a well-settled Eighth Amendment duty to protect inmates from violence at the hands of other inmates in 2010, establishment of a custom or policy which gave inmates freedom to roam the housing unit at night and attack other inmates is objectively unreasonable, and was at the time of this incident in 2010. Compare, LaMarca v. Turner, 995 F.2d 1526, 1537 (11th Cir. 1993), cert. den., 510 U.S. 1164, 114 S.Ct. 1189 (1994) (consideration of evidence of lack of prison safety measures, such as failure to provide inmate movement controls to reduce casual egress and ingress of aggressive assailant wolves within the open dormitories, is probative of the means available to the prison officials to protect inmate prison safety and whether

---

[3] As stated above, a fact finder may infer that a prison official knew of a substantial risk from the very fact that the risk was obvious.

they knowingly or recklessly disregarded solutions within their means). In other words, a reasonable person would have known that implementation of an open egress/ingress policy in the dorms at night would invite inmate-in-inmate violence. Since Davis' allegations must be accepted as true for purposes of this motion, Davis has alleged, and therefore shown, that Warden Cooper knew that a policy of opening tier doors a night, thereby allowing inmates ingress/egress in every tier, would create a substantial risk inmate-on-inmate violence.

Accepting the allegations of the complaint as true for purposes of Cooper's motion to dismiss, Davis has stated a claim against Warden Cooper for failure to protect him from attacks by other inmates. Therefore, Warden Cooper is not entitled dismissal of Davis' claim pursuant to Rule 12(b)(6) and is not entitled to qualified immunity.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Warden Cooper's motion to dismiss be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response

or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of December, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE