RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4 / 16 / 12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| RAYFIELD DAVIS, | CIVIL ACTION |
| Plaintiff | SECTION "P" |
| | NO. CV10-01920 |
| VERSUS | |
| JAMES LEBLANC, et al., | JUDGE DEE D. DRELL |
| Defendants | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Rayfield Davis ("Davis") on December 27, 2010 and amended on March 21, 2011 (Doc. 7). The sole remaining defendants are Lynn Cooper, warden of the Avoyelles Correctional Center ("ACC") in Cottonport, Louisiana, sued in his individual capacity, and Sgt. Ducote, a corrections officer employed at ACC.[1] Davis alleges that, on September 8, 2010, at about 11:30 p.m., while he was confined in ACC, he was attacked and stabbed by two other inmates who were armed with a dangerous weapon. Davis contends defendants failed to protect him, violated his right to due process, recklessly endangered him, and failed to properly secure the housing area. Davis alleges that he has exhausted his administrative remedies. For relief, Davis asks

---

[1] Defendants Clyde Benson, Paul Gaspard, James Cooper, Robert Ewing, Ronnie Howard, James LeBlanc, and John Doe were dismissed on June 20, 2011 (Doc. 10).

for monetary damages, injunctive relief, medical expenses, costs, attorney fees, any other general and equitable relief, and a jury trial.

Defendant Cooper filed a motion to dismiss, pursuant to Fed.R.Civ.P. rule 12(b)(6), for failure to state a claim on which relief can be granted (Doc. 16), which was denied (Doc. 27), and Cooper answered the complaint (Doc. 28). Ducote also filed a motion to dismiss for failure to state a claim on which relief may be granted (Doc. 30), and filed an answer (Doc. 32). Ducote's motion to dismiss is now before the court for disposition.

Law and Analysis

Motion to Dismiss

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hirras v. National Railroad Passenger Corp., 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); Doe, 753 F.2d at 1102. For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of the complaint must be

taken as true, and any ambiguities must be resolved in favor of the pleader. Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1101 (D.C.Cir. 1985). It is presumed that general allegations embrace the specific facts that are necessary to support the claim. National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

The defense of qualified immunity may be considered on a motion to dismiss. In order to survive a motion to dismiss, a plaintiff's allegations must portray an objectively unreasonable violation of a clearly established right. Warnock v. Pecos Cty., 116 F.3d 776, 779 (5th Cir. 1997), citing Seigert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793 (1991).

The first inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513 (2002). If it is established that the defendants participated in constitutionally impermissible conduct, the defendants may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Hope, 122 S.Ct. at 2515. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right. In the light of pre-existing law, the unlawfulness must be apparent. However, officials can be on notice that their conduct violates established law even in novel factual circumstances. The salient question the court must ask is whether the state of the law at the time of the alleged incident gave the officers fair warning that their alleged conduct was unconstitutional. Hope, 122 S.Ct. at 2516.

Thus, if the pleadings on their face show an unreasonable violation of a clearly establish constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6). Shipp v. McMahon, 234 F.3d 907, 911-912 (5th Cir.), cert. den., 532 U.S. 1052, 121 S.Ct. 2193 (2001). Also, Woods, 60 F.3d at 1164. In other words, the threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Keenan v. Tejada, 290 F.3d 252, 261 (5th Cir. 2002), citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

Davis' Allegations

Davis alleges that, on September 8, 2010, at about 11:30 p.m., he was in bed asleep in the Cajun 3 dorm, B1 tier, when he was attacked by two other inmates (one was known as "Oklahoma") with a weapon and stabbed several times. Davis contends he defended himself and began fighting with "Oklahoma." Davis further alleges that he was saved by his cellmate, Fitzpatrick, who intervened in

4

the attack and was also stabbed. Davis contends that Sgt. Ducote, the tier sergeant of the Cajun 3 housing unit who was on duty at the time, was asleep at his station, and the two offenders (inmates housed in the A1 tier) walked past him to enter the B1 tier and attack Davis.

Davis alleges there is a policy or custom at ACC to open the doors to the tiers of the housing units at 10:30 p.m. Davis contends the policy/custom was promulgated by Warden Cooper in a memo, in disregard to the safety of inmates and in violation of Louisiana Department of Public Safety and Corrections policies. Davis alleges that Warden Cooper's open-tier policy/custom enabled his attackers to enter his housing unit tier and attack him.

<u>Deliberate Indifference</u>

Ducote contends Davis failed to state a claim for failure to protect him from violence from other inmates because he cannot show Ducote was deliberately indifferent to a substantial risk of harm to Davis. Ducote also argues that he is entitled to qualified immunity.

                    1. Eighth Amendment Right to Safety

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state

action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. <u>Hare v. City of Corinth</u>, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, a court must ascertain whether the officials involved acted with deliberate indifference to the inmates' health or safety. The courts may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. <u>Hope v. Pelzer</u>, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), and cases cited therein.

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the

penalty that criminal offenders pay for their offenses against society. <u>Farmer</u>, 114 S.Ct. at 1976-77.

Therefore, at the time of the incident complained of herein in 2010, the Eighth Amendment right to protection from violent assaults by other inmates was clearly established. The court must next determine whether the pleadings on their face, taken as true for purposes of this motion, show Ducote unreasonably violated Davis' constitutional right to safety from attacks by other inmates.

## 2. Failure to Protect Claim

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. <u>Farmer</u>, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. <u>Farmer</u>, 114 S.Ct. at 1979.

7

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. Farmer, 114 S.Ct. at 1984-1985. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such

a risk. <u>Farmer</u>, 511 U.S. at 842, 114 S.Ct. 1970.

Thus, Davis need not allege that defendants had knowledge that Davis was likely to be attacked by other inmates. It is sufficient for purposes of this motion to dismiss that Davis has alleged that Defendants were aware of the general, obvious risk to inmate safety posed by allowing inmates to roam freely between tiers at night.

Davis further alleges that Ducote, who was on duty that night, left the tier doors to Cajun 3 B1 open, allowing inmates to enter and attack Davis while he slept or was away from his station. Although Davis does not allege that Sgt. Ducote knew in advance that Davis would be attacked, he alleges Ducote was aware of the general, obvious risk to inmate safety in a prison where inmates are allowed to roam freely between tiers at night, and when a guard is absent from or asleep at his station and does not see an attack taking place. Davis alleges that a similar incident occurred before, when Ducote fell asleep at his station and another inmate was attacked.[2]

For purposes of this motion to dismiss, the factual allegations of Davis' complaint are taken as true. Ducote argues that Davis has not stated a claim because he has not alleged that Ducote had actual knowledge that Davis would be attacked. Although

---

[2] The undersigned is aware of a similar case filed against Sgt. Alex Ducote and other defendants, <u>Tommy Bray v. James LeBlanc, et al.</u>, 1:10-cv-00586 (W.D.La. 2010). ***(chk WL for a case cite)***.

an official may prove that he was unaware of even an obvious substantial risk to inmate health and safety by the usual evidentiary means, Ducote has not offered any proof of his lack of knowledge. In other words, a reasonable person would have known that a prison guard who is absent from or asleep at his station invites inmate-in-inmate violence and/or impairs the guard's ability to see and respond to such violence.

Accepting the allegations of Davis' complaint as true for purposes of Ducote's motion to dismiss, Davis has stated a claim against Sgt. Ducote for failure to protect him by alleging the obvious and substantial risk of harm to all inmates created by permitting inmates to roam freely between tiers during the night, and the obvious and substantial risk of harm created when a prison guard is absent from his station or asleep at his station when the inmates are permitted to roam freely. Therefore, Davis is not entitled to qualified immunity.

Ducote's motion to dismiss Davis' action pursuant to Rule 12(b)(6) should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Ducote's motion to dismiss be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 16th day of April 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE